AMERICAN GENERAL CORPORATION *v.* MARTHA W. CAMP ET AL.

MARTHA W. CAMP ET AL. *v.* AMERICAN GENERAL CORPORATION

AMERICAN GENERAL CORPORATION *v.* JOHN GROSS ET AL.

JOHN GROSS ET AL. *v.* AMERICAN GENERAL CORPORATION

[Nos. 73-76, October Term, 1936.]

630

*Decided February 17th, 1937.*

The causes were argued before BOND, C. J., URNER, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*James Piper, R. Dorsey Watkins,* and *Reuben Oppenheimer,* with whom were *Fisher & Fisher, Piper, Carey & Hall, Emory, Beeuwkes, Skeen & Oppenheimer,* and *Satterlee & Canfield,* on the brief, for the American General Corporation.

*Hilary W. Gans* and *Frank B. Ober,* with whom were *Ritchie, Janney, Ober & Williams* and *Brown & Brune,* on the brief, for Martha Camp and others.

*Frank B. Ober,* with whom were *William M. Maloy* and *Ritchie, Janney, Ober & Williams,* on the brief, for John Gross and others.

PARKE, J., delivered the opinion of the Court.

The appeals in these two cases were argued together and will be so decided on account of the similarity of the questions involved. The controversies grow out of the consolidation of eight separate but allied or subsidiary corporations into one corporation, known as the

American General Corporation, a body corporate of the State of Delaware. Seven of these corporations were created under the laws of the State of Maryland, and the eighth was incorporated in the State of Delaware. The consolidation became effective on November 23rd, 1935, and the questions are with reference to the value of the stock of those preferred stockholders of the International Securities Corporation of America and of the American Founders Corporation, two of the Maryland corporations, who dissented from the consolidation. There was a separate valuation and decree with respect to the dissenting stockholders of each of these two corporations, and cross-appeals were taken. The appeals of the stockholders of the International Securities Corporation of America, which will be called "International" and of the American General Corporation, which will be called "defendant," are Nos. 73 and 74 on the docket of the October Term, 1936, of this court, and those of the stockholders of the American Founders Corporation, which will be called "Founders," and of the defendant, are Nos. 75 and 76 on the same docket.

The eight corporations were interrelated before the consolidation. The relation of the group as a whole was so complicated that a consolidation of the members into one corporation presented advantages in the simplification of financial structure, management, and accounting. These considerations prompted the formation of a plan of corporate union, and, after a lengthy period of negotiation, an agreement of consolidation was prepared; presented to the various stockholders; and, at a meeting for that purpose, adopted on November 4th, 1935. The vote was not unanimous, but the dissentients were the owners of much less than one-third of the stock entitled to vote, and, so, could not prevent the consolidation.

The International stock embraced 44,736 shares of six per cent. preferred stock of $100 par value a share; 14,714 shares of six and one-half per cent. preferred stock of $100 par value a share; 591,156 shares of Class A common stock of one dollar par value a share; 600,000

shares of Class B common stock of ten cents par value a share. The six per cent. preferred stock was subject to call and retirement at $105 a share and the six and one-half per cent. stock at $107.50. The dividends on these two classes of preferred stock were cumulative and none had been paid since December 1st, 1931. The owners of 3,834 shares of the six per cent. preferred stock and of 482 shares of the six and one-half per cent. preferred stock opposed the agreement of consolidation.

The Founders stock outstanding consisted of 156,577 shares of preferred stock of the par value of $50 a share. 42,379 was of the seven per cent. series of preferred stock, and 114,198 of the six per cent. series of preferred stock. The seven per cent. series was redeemable at a premium of five dollars a share, with accrued dividends, and the six per cent. series at a premium of $2.50 a share with accrued dividends. The owners of 360 shares of the six per cent. series of preferred stock and 649 shares of the seven per cent. series of preferred stock rejected the agreement of consolidation. The accrued dividends on every share of the six per cent. series amounted to $12.19 and to $14.22 on the seven per cent. series.

The dissenting stockholders of the International and of the Founders demanded payment for their stock, but were unable to agree upon the fair value of their stock, and separately filed petitions in the Circuit Court of Baltimore City for the appointment of three disinterested commissioners to appraise the fair value of their stock, without regard to any depreciation or appreciation of the same in consequence of the consolidation. The Chancellor selected three commissioners, who were disinterested and possessed expert qualifications for the valuation. Although separate orders were signed, the commissioners were the same in each, as were their commissions.

The respective parties appeared before the commissioners and offered testimony and the parties were heard. After weighing the matters the commissioners made

separate valuations and returned them in two distinct reports. In the report which was made with reference to the International, the fair value of both the six per cent. and the six and one-half per cent. preferred stock of International owned by the dissenting stockholders is, without regard to any depreciation or appreciation by reason of the consolidation, $91.47 per share as of November 22nd, 1935. In the valuation of the Founders stock, every share of the preferred stock was valued at $50 per share with the accrued dividends of $14.22 per share to be added on every share of the seven per cent. series and of $12.19 per share to be added on every share of the six per cent. series. Each report made a further award of six per cent. interest on the amount to which every stockholder was entitled. The interest to be computed from November 22nd, 1935.

The defendant excepted to the award, as did the dissenting stockholders, in each case. The defendant, also, filed in each case exceptions to certain testimony offered in evidence before the commissioners, and moved the Chancellor to strike out the testimony. The Chancellor in both cases overruled all the exceptions and, after full and elaborate argument and careful consideration, as is shown by his opinions, confirmed the awards of the commissioners. The dissenting stockholders believe the awards too low and the defendant corporation finds them too high, and their reasons are that, in arriving at their respective findings, the commissioners erred in the inclusion or exclusion of elements, testimony, and theories of value which should have been rejected or considered accordingly as they made for the contentions and material interests of the respective parties. It will not be necessary to treat the questions raised separately, since they will be covered by the discussion to follow.

The power of a dissenting stockholder to prevent the sale of all the assets of a corporation or the consolidation or merger of its corporate existence with another corporation frequently proved in the past a disadvantage to the other stockholders. To overcome this difficulty

and to meet a general demand, and, at the same time, to protect the dissentient in his property rights to their full extent, the General Assembly of Maryland passed appropriate legislation. So, by compliance with prescribed conditions and procedure, any one or more corporations of this state may be consolidated with another such corporation of this or another state to form a new corporation, or be merged into another such corporation, provided, *inter alia*, that the consolidation or merger shall be approved by the requisite vote of two-thirds of all the shares entitled to vote. Code (1935 Supp.) art. 23, secs. 33-36. If a dissenting stockholder voted or, in the case of a stockholder who was not entitled to vote, registered a protest against the agreement submitted, he may, within a specified time, make demand of the consolidated corporation or the corporation which survived the merger, as the case may be, for the payment of the fair value of his stock; and, in the event of a disagreement, the dissenting stockholder may apply by petition for such relief as the Chancellor below accorded and is found on the records now at bar. The remaining portion of section 35 should be quoted for an understanding of the effect of the appraisal of the fair value of the stockholder's stock "without regard to any depreciation or appreciation thereof in consequence of the said consolidation or merger."

Section 35 concludes in these words: "and the award of said commissioners (or that of a majority of them) when confirmed by said court, shall be final and conclusive on all parties, unless any stockholder or the corporation consolidating or merging as aforesaid, feeling aggrieved at the said action of the said court, shall appeal to the Court of Appeals of Maryland, which right of appeal from such action of the court is hereby given, and said consolidated corporation or the corporation surviving the merger, as the case may be, shall pay such stockholder the value of his stock ascertained as aforesaid, and on receiving such payment or on a tender thereof, said stockholder shall transfer his stock to the

said corporation, which stock shall then have the status of authorized but unissued stock; and in case the award is not so paid within thirty days from the filing of said award and confirmation by said court, or in case of an appeal, within thirty days from the confirmation of said award by the Court of Appeals, and notice thereof given in the manner aforesaid to said stockholder and the said corporation, the amount of the award shall be a decree against the said corporation, which decree shall be a prior lien to any mortgage or other lien placed on its property or franchises by the consolidated corporation or, in the case of a merger, by the surviving corporation after such merger has become effective, and may be collected as other decrees in said court are by law collectible."

In *Homer v. Crown Cork & Seal Co.*, 155 Md. 66, 84-86, 141 A. 425, 434, it was said: "Unless acting *ultra vires*, illegally, or in bad faith, the directors of a corporation of the prescribed class have a statutory right to approve of a sale of all its assets as an entirety at a given price, and the stockholders owning two-thirds of all the stock outstanding and entitled to vote may approve of such sale, and it will then be made. This is a property right of which the shareholders, while acting in good faith, may not be deprived, no matter the motives nor the folly and consequences of their action. *Supra, France on Corporations* (2nd. Ed.) p. 59, sec. 38; p. 62. A sale so authorized is, however, subject to the right of the dissentient minority to be paid, notwithstanding the sale price, the fair value of his stock." And, as a stockholder holds his stock in a Maryland corporation subject to the statutory power of the stated majority of stockholders to consolidate or merge with another corporation, so does the dissenting stockholder possess his reciprocal statutory right to be paid the fair value of his stock without regard to any depreciation or appreciation thereof in consequence of the combination or merger. Consequently, the dissenting stockholders may claim to be paid this fair value and no more.

The problem of finding the fair value of stock is a

special problem in every particular instance. Since the dissentient will not unite with the majority, the value of his stock should not be affected by a corporate change in which he refused to participate, whether the result be appreciation or depreciation, and this the statute recognizes and eliminates, but otherwise affords no express criterion of fair value. The implication that every owner of stock is aware that the corporation may have its corporate existence ended by consolidation or merger affects the owner with the natural and reasonable consequence that, so far as he is concerned, his refusal to accept the terms of consolidation or merger by electing to take the fair value of his stock in cash leaves him in the position of holding stock in a corporation whose legal existence is terminated. The owner of shares of stock in a corporation whose legal existence is at an end would be entitled to receive the aliquot proportion which the number of shares held would be entitled to receive in the distribution of the net amount of the corporate funds in which his particular kind of stock would be entitled to share. Thus, by an ascertainment of all the assets and liabilities of the corporation, the intrinsic value of the stock, and not merely its market value, when traded in by the public, would be determined. If the dissenting owner receive this amount, so ascertained, he would receive the fair value of his stock.

The general problem, therefore, would be, in every instance, of an appraisal pursuant to the statute, to ascertain the fair value. Every appraisal would as a rule be a particular problem which would vary with the kind of corporation, the nature, extent, and methods of its operations, the state of its assets, the form and incidence of its liabilities, and with many other circumstances too numerous to admit of a general classification. These general remarks are to direct attention to the manifold possibilities and difficulties of the problem, and the impracticability of the statement of any rule of uniform application as to the factors of fair value.

As has been stated, the ownership of stock in a Maryland corporation entails the possibility of the end of

corporate existence and the termination of the ownership of the stock by merger or consolidation. So, when such a situation develops, it is logical and consistent to infer that the fair value of such stock to a dissenting owner is its intrinsic value on a liquidation. Since in mergers or consolidations there is generally a transfer of corporate assets of the consolidated or merged corporation, without sale or conversion but in kind and in specie, the assets are not in the form of money but unconverted, and therefore an artificial liquidation must be made in order to ascertain by this procedure the net asset value of the stock as accurately as the problem admits.

The assets of the corporation would include every kind of property and value, whether realty or personalty, tangible or intangible, including good will and its value as a going concern. In the conversion of assets into money, the value of every item should be investigated and determined with respect to market price, actual worth, and yield in liquidation. After the deduction of the approximated expense of winding up the corporate affairs and of paying the corporate obligations, the net result of these estimates would be the net asset value, which could be tested and rectified, if need be, by the market value of the stock of the consolidated or merged corporation, where there was a market at the time of the merger or consolidation of sufficient volume and activity to afford a basis for comparison. A further check on the accuracy of the total net assets would be, in proper cases, a capitalization of the estimated future income. Another concurrent test of doubtful utility, which should be cautiously used, are book values. See *Lattin, Remedies of Dissenting Stockholders under Appraisal Statutes*, 45 Harvard Law Review, 233-270; note in 47 Harvard Law Review, 847-853.

The International and Founders corporations were engaged in the purchase and sale of shares, stocks, certificates, bonds, mortgages, debentures, and all other forms of choses in action and evidences of indebtedness, and many other forms of financial activities for the purpose of investment and profit. Their principal assets

consisted of bonds and stocks, which were quickly convertible into money, and money on deposit in banks. The value of their corporate assets in the form of securities, which they bought and sold according to the market price, could be quickly and easily obtained and appraised. Their obligations were similarly ascertainable. Nor was there any difficulty in obtaining the income from their securities.

The three competent and disinterested commissioners who had the qualifications of experts in the value of securities, thoroughly and carefully investigated and considered their problem before their appraisal was made. After determining the value of the assets and the obligations of the two corporations, the commissioners considered the market values of the preferred stock, which were quite low, and rejected these values because the preferred stocks were not listed and the transactions were, in their judgment, too few and infrequent to have any weight, and the prevalent lack of confidence of the public in these and other investment trusts was reflected in such market quotations as could be obtained. The commissioners examined the possibility, but found there was no element of value either in good will, or as going concerns, or in net earnings from dividends and interest. Their conclusion was that the prices obtainable for the shares of preferred stocks were so much below the net asset values that neither good will nor going business value could be assumed to exist.

No dividends have been paid on any of the preferred stock of the International since December 1st, 1931, and none on the Founders after November 1st, 1931; and the commissioners concluded that the net earnings of the corporations from dividends and interest were too scant to justify a basis for capitalization. It appears from the reports of the commissioners that their finding was that neither the earnings, rate of dividend, nor the other bases of argument for an increased award were sufficient. So, the awards reflect the judgment of the commissioners after they had carefully investigated, ascertained, and considered all the elements of value with

respect to the appreciation or depreciation of the fair value of the preferred stocks of the two corporations, without reference to the merger or consolidation.

The only substantial difference in fact between the position of the two corporations was that Founders had an asset value of $109.27 per share, which was in excess of both the liquidation value and redemption value of its preferred stocks, while the International did not have enough asset value per share to pay its preferred stocks in full. The dissenting stockholders of Founders argue that the awards to them should be, at least, increased by the redemption premium of $2.50 and $5 per share on the six per cent. and seven per cent. preferred stocks respectively. The commissioners rejected this contention because it implied that the corporation had a going concern value. As observed by the Chancellor, the market price of the securities as of the date of the consolidation was less than the dissolution value of the stock. The right to a redemption premium was, however, a contractual one, which was not enforceable by the stockholder until, and if, the corporation should exercise its election to redeem, and the corporation had not made this election, which was a condition precedent to any benefit to the owner of stock.

The testimony of the witnesses presented clearly the contentions of the parties concerned, and the court perceives no sufficient ground to set aside the valuations made with respect to the preferred shares of stocks of the International Securities Corporation of America and of the American Founders Corporation.

In reaching a decision, the appraisal of the commissioners must be given great weight, first, by the chancellor and now by this tribunal. The presumption is that their award is correct, and effect will be given to their determination unless it appear by clear and satisfactory evidence that the award was, by reason of some material and prejudicial error of law, in conduct or of fact, not the fair value of the stock, without regard to any depreciation or appreciation thereof in consequence of the merger or consolidation.

The court has found no such error with respect to the appraisals, and the question on the allowance of interest, at the rate of six per cent., on the amounts of the awards from November 22nd, 1935, remains for consideration.

What the dissentient is entitled to receive is the fair value of his stock as provided by the statute. If the parties cannot agree what this value is, neither is in default because of their failure. Nor can the amount of the fair value be paid until it is ascertained by an appraisal and a confirmation of the appraisement by the court. The award under the appraisal becomes final and conclusive on confirmation, unless either the stockholder or the corporation is aggrieved, and appeals to the court here. If there is no appeal, or if there is an appeal, and confirmation, then the corporation shall pay to the stockholder the value of his stock, and the stockholder shall transfer his stock to the corporation, and if, within thirty days either from the filing of the award and confirmation by the court, or from the confirmation of the award by the Court of Appeals, the award is not paid, "the amount of the award shall be a decree against the said corporation, which decree shall be a prior lien to any mortgage or other lien placed on its property or franchises by the consolidated corporation, or, in case of a merger, by the surviving corporation after such merger has become effective, and may be collected as other decrees in said court are by law collectible." Code, art. 23, secs. 35 and 36.

Consequently, the amount of the award is not ascertained until confirmation by the Chancellor or, in case of appeal, by the Court of Appeals, and the corporation has thirty days in which to pay after confirmation either by the Chancellor or by the appellate court. During these thirty days the stockholder cannot enforce the collection of the amount of the award, and must transfer his stock when paid. All the stockholder is entitled to receive is the value of his stock as represented by the amount of the award. He is not entitled to receive more in the form of interest until after the expiration of the thirty day period, because the statute expressly provides that

the *amount* of the *award* shall be the lien, which inferentially excludes any interest from accruing during the period before the amount of the award becomes a decree. Since the stockholder has no enforceable right to the money until the corporation has withheld or deprived the stockholder of what is due him for thirty days after the confirmation, there is no reason nor principle for interest to be chargeable until the corporation is in default. So, the commission exceeded their power when, after determining the fair value of the stock, they added to this value interest from the day of the merger or consolidation. It follows that interest must be disallowed, but the award will be confirmed.

The court perceives no error in the rulings of the Chancellor on the testimony to which objection was made.

The award of the commissioners in Nos. 73 and 74 Appeals, ascertaining the fair value of the six per cent. and six and one-half per cent. preferred stock of the International Securities Corporation of America, is hereby confirmed without the allowance of interest from November 22nd, 1935; and the award of the commissioners in Nos. 75 and 76 Appeals, ascertaining the fair value of the six per cent. and seven per cent. preferred stock of the American Founders Corporation, is hereby confirmed, without the allowance of interest from November 22nd, 1935.

> *Decree in Nos. 73 and 74 affirmed in part and reversed in part, and cause remanded, and the costs of these appeals to be paid one-half by the corporation and one-half by the dissenting stockholders.*
>
> *Decree in Nos. 75 and 76 affirmed in part and reversed in part, and cause remanded, and the costs of these appeals to be paid one-half by the corporation and one-half by the dissenting stockholders.*