# Richmond

THE PITTSTON COMPANY v. E. FRANK O'HARA, ET ALS.

January 15, 1951.

Record No. 3718.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Robert T. Barton, Jr., William W. Crump, A. C. Epps* and *David Teitelbaum*, for the appellant.

*John J. Wicker, Jr., Harris J. Griston, Seymour M. Heil-*

bron, George M. Jaffin and Charles Winkelman, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

For the third time we are here called upon to decide important rights of certain persons holding preferred stock in the United States Distributing Corporation, a Virginia corporation, who dissented from the merger of that corporation with The Pittston Company, a Delaware corporation, under the name of the latter. The merger became effective on December 31, 1942.

On June 2, 1943, Maurice D. Adams, E. Frank O'Hara, and certain other dissenters, whom we shall refer to as the "Adams-O'Hara group," having notified The Pittston Company, the merged corporation, that they elected to dissent from the merger, filed in the Law and Equity Court of the city of Richmond a bill in equity under the style of *Adams* v. *United States Distributing Corp.*, for the determination and recovery of the fair cash value of their stock.

On the first appeal, taken from a decree entered in that cause, we held that the appraisal proceeding under Code, section 3822, as amended, was the exclusive remedy which must be pursued by all of the dissenting stockholders in order to have their stock valued and paid for, and that an independent suit in equity could not be maintained for that purpose. *Adams* v. *United States Distributing Corp.*, 184 Va. 134, 34 S. E. (2d) 244, 162 A. L. R. 1227 (*cert.* denied, 327 U. S. 788, 66 S. Ct. 807, 90 L. ed. 1014).

In the meantime The Pittston Company had instituted in the Chancery Court of the city of Richmond, hereinafter referred to as the lower court, a proceeding under the statute and under the style of *The Pittston Co.* v. *Ungerleider & Co., et al.*, for an appraisal of the fair cash value of the stock of the dissenters. All of the dissenters, except the members of the Adams-O'Hara group, were made parties defendant to this proceeding. This statutory proceeding culminated in a decree entered on December 6, 1944, fixing the fair

cash value of the stock of those defendant dissenters at $55 per share. For convenience we shall refer to that as the first appraisal. By the further terms of this decree The Pittston Company was directed to pay to those defendant dissenters such ascertained cash value, plus interest from the effective date of the merger to October 22, 1944, the latter date having been fixed by stipulation of counsel.

After our decision on the first appeal the lower court, on the motion of The Pittston Company and over the objection of members of the Adams-O'Hara group, entered a decree on April 16, 1946, holding that the members of this group should receive for their stock the same value which had been fixed in the first appraisal, namely, $55 per share. In this latter decree interest was allowed to the members of the Adams-O'Hara group on the value of their stock from the effective date of the merger until paid. The Pittston Company was unsuccessful in its contention that such interest should cease on October 22, 1944, as had been decreed in the case of the other dissenters.

Some of the members of the Adams-O'Hara group abided by the terms of this decree of April 16, 1946, surrendered their certificates and accepted the sum of $55 per share with interest. However, nine members of the group appealed and at their instance we reversed and annulled the decree, on the ground that inasmuch as these dissenters were not parties to the first appraisal proceeding and had taken no part therein, the decree of December 6, 1944, fixing the value of the other dissenters' stock at $55 per share, was not *res judicata* as to or binding on the members of the Adams-O'Hara group. Hence, we held, the lower court erred in imposing upon this group of dissenters, by the decree of April 16, 1946, the same valuation of the stock which had been fixed for the other dissenters in the decree of December 6, 1944. The dissenting members of the Adams-O'Hara group were, we said, entitled to a new and independent appraisal, and the cause was remanded for that purpose. *O'Hara v. The Pittston Co.*, 186 Va. 325, 42 S. E. (2d) 269, 174 A. L. R. 945.

In their petition for the appointment of new and independent appraisers the members of the Adams-O'Hara group demanded interest on the ascertained fair value of their stock from the effective date of the merger until they were paid.

The Pittston Company, in its answer to this petition, again asserted that these dissenters were not entitled to interest beyond October 22, 1944, that being the date on which interest had stopped running in the case of the other dissenters, under the terms of the decree of December 6, 1944.

New appraisers were appointed, and on April 11, 1949, they filed their report fixing the fair cash value of the stock held by the nine members of the Adams-O'Hara group at $57.75 per share as of the effective date of the merger.

Both The Pittston Company and the dissenters filed written exceptions to this report. However, The Pittston Company withdrew its exceptions and by leave of court and over the objection of the dissenters filed an amended answer, in which it took the position that these dissenters were "entitled to no interest whatsoever" on the ascertained fair cash value of their stock.

On November 17, 1949, the lower court entered a decree confirming the appraisers' report as to the fair cash value of the stock of the members of the Adams-O'Hara group. Over the objection of The Pittston Company it decreed that the dissenters were entitled to interest at the rate of six per cent. per annum upon such ascertained value from the effective date of the merger until paid, and entered judgment in favor of each of the nine dissenters against The Pittston Company accordingly.[1]

From this decree The Pittston Company has appealed. It does not question the adjudication of the fair cash value

---

[1] The lower court incorporated in the record no written opinion as the basis of this decree. Counsel for the appellees have filed as an appendix to their brief what they say is a "substantially accurate" memorandum made by them of the court's oral opinion.

Counsel for the appellant question the accuracy and completeness of this memorandum.

of the dissenters' stock. Its sole contention is that the dissenters are entitled to interest, not from the effective date of the merger, but from November 17, 1949, the date of the entry of the decree fixing the value of their stock.

Whether the appellee dissenters are entitled to interest on the fair cash value of their stock, as they claim and as the lower court held, from the effective date of the merger, depends upon a proper interpretation of the statute.[2]

Section 3822-a, paragraph (a), provides that any stockholder of a corporation who has not given his assent to the lawful merger of his corporation with another, may by following the prescribed procedure, receive from the consolidated or merged corporation "the fair cash value of his stock as of the day before the vote for the agreement of consolidation or merger of his corporation was so cast." (Code, sec. 13-47.)

Paragraph (b) of the section provides that if the dissenting stockholder and the merged or consolidated corporation are unable to agree upon "the fair cash value of his stock, as of the day" aforesaid, either he or the merged corporation, upon reasonable notice to the other, may apply to a specified court, or to the judge thereof in vacation, to have "the fair cash value of his stock, as of the date aforesaid," determined by three disinterested appraisers appointed by the court. (Code, sec. 13-48.)

---

[2] At the time of the merger, which became effective on December 31, 1942, the applicable statute was Code, § 3822, as amended by Acts 1922, ch. 380, pp. 625, 632-637, which is copied in a footnote in the opinion on the second appeal. (*O'Hara* v. *The Pittston Co., supra,* 186 Va., at page 337, 42 S. E. (2d) at page 275.)

By an emergency act which became effective on March 31, 1944 (Acts 1944, ch. 367, pp. 523, 528-532), section 3822, as amended, was divided into two sections; section 3822, dealing with the manner of consolidation or merger, and section 3822-a, dealing with the remedy of dissatisfied stockholders, which relates to the matter with which we are now concerned.

Section 3822-a is now embodied in the Code of 1950 as sections 13-47 to 13-54, both inclusive.

Neither the emergency act of 1944, nor the provisions as now found in the Code of 1950, made any material change in the particular provisions of the statute with which we are now concerned. The briefs on both sides refer to the pertinent section as 3822-a, and we will do the same.

Paragraph (c) provides that the appraisers so appointed, after investigation, shall report to the court, or the judge thereof in vacation, as promptly as possible, "the fair cash value of the stock of the dissenting stockholder as of the day" aforesaid. (Code, sec. 13-49.)

Paragraph (d) provides that if such stockholder or the consolidated or merged corporation be dissatisfied with "the fair cash value as determined by the appraisers," he or it may apply to the court, or to the judge thereof in vacation, to set aside the finding of the appraisers. If the court or judge be of opinion that the "valuation is just," it or he shall deny the application and "shall confirm" "the report of the appraisers" "and the amount thereof." In case of such confirmation the amount fixed by the appraisers "shall immediately become and be a final judgment of the court against the consolidated or merged corporation and may be collected as other judgments of a court of competent jurisdiction are by law collectible." (Code, sec. 13-50.)

If the court or judge be of opinion that the valuation is not just, the report of the appraisers shall be set aside and the court or judge "shall proceed to ascertain the fair cash value of the stock of such stockholder, as of the day aforesaid, and shall enter judgment against the consolidated or merged corporation accordingly, which judgment may be collected as other judgments of a court of competent jurisdiction are collectible." (Code, sec. 13-50.)

Paragraph (e) of the section provides that, "Upon payment or tender of payment by the consolidated or merged corporation of the value of the stock so ascertained, the dissenting stockholder shall deliver up his certificate of stock * * * and shall mark the judgment satisfied." If the dissenting stockholder refuses to deliver the stock and mark the judgment satisfied upon such tender, then the corporation may deposit to the credit of the court in which the proceeding is pending "the value of the stock so ascertained and determined," and the court or judge "shall enter an order reciting the deposit and declaring the judgment satisfied." (Code, sec. 13-51.)

This paragraph further provides that, "Thereafter the rights of the stockholder under his stock in the consolidating or merging corporation shall cease and determine and his sole right shall be to receive the cash so deposited upon surrender" of his certificate or certificates of stock.

█ From this analysis it is plain that the statute makes no provision for the allowance of interest to the dissenting stockholder on the ascertained fair cash value of his stock either by the appraisers or by the court in its entry of judgment. Whether the court adopts the valuation of the appraisers, or itself fixes such valuation, it is authorized to enter judgment only for the ascertained fair cash value as of the specified time.

█ When the consolidated corporation pays or tenders to the stockholder "the value of the stock so ascertained," it is entitled to receive the stock and the stockholder is required to deliver it to the corporation.

Similar statutes are found in other States, and with the two exceptions[3] to which we shall later refer, the courts have uniformly held that in such a statutory appraisal proceeding the dissenting stockholder is not entitled to receive from the merged corporation interest on the ascertained fair cash value of his stock from the effective date of the merger. See *Meade* v. *Pacific Gamble Robinson Co.* (Del.), 58 A. (2d) 415 (affirming 51 A. (2d) 313); *In re Janssen Dairy Corp.*, 2 N. J. Super. 580, 64 A. (2d) 652; *American General Corp.* v. *Camp*, 171 Md. 629, 190 A. 225; *In re Erlanger*, 237 N. Y. 159, 142 N. E. 571.[4]

These decisions are grounded on the following principles with which we are in accord:

█ (1) The proceeding is statutory in nature and the court sits as a special tribunal with the limited powers

[3] *Skipwith* v. *Federal Water, etc., Corp.*, 185 Misc. 248, 56 N. Y. S. (2d) 804; *Tobacco Products Corp.* v. *Plummer*, Chancery Court of the city of Richmond, 1933 (unreported).

[4] Since the New York and Maryland decisions the legislatures of those States have amended their statutes to provide for the payment of interest. See, *In re Janssen Dairy Corp.*, *supra* (64 A. (2d), at page 655), for a reference to these statutes.

granted to it by the statute. Where the statute does not provide for interest the court has no discretion to award interest. *Meade* v. *Pacific Gamble Robinson Co., supra* (58 A. (2d), at page 418); *In re Janssen Dairy Corp., supra* (64 A. (2d), at page 654).

■ (2) The act of a corporation in merging with another is not a tort or a legal wrong which violates the rights of a dissenter and entitles him to interest within the discretion of the court, or under the interest statute. (Code, sec. 8-223.) The merger is effected under full authority of the statute which is an essential part of the contract between the corporation and its stockholders.[5] *Meade* v. *Pacific Gamble Robinson Co., supra* (58 A. (2d), at pages 417, 418); *In re Janssen Dairy Corp., supra* (64 A. (2d), at page 654).

■ (3) The merger of a corporation in which the dissenting stockholder owns stock with another does not constitute a "taking" of the stock of the dissenter in the sense of a condemnation proceeding. In a merger there is no taking of the dissenter's stock without his consent. Under the terms of the statute, which is a part of his contract, he has the election to retain his stock in the consolidated corporation or to accept the fair cash value thereof. There is no compulsion on him to choose one course rather than the other. If he elects not to remain with the merged corporation, he surrenders his stock in return for the fair cash value thereof pursuant to the terms of his contract with the corporation. *Meade* v. *Pacific Gamble Robinson Co., supra* (51 A. (2d), at pages 317, 318); *In re Erlanger, supra* (142 N. E., at page 573).

■ (4) In any event, interest cannot be awarded until the stockholder's claim against the corporation becomes liquidated upon the ascertainment of the fair cash value of his stock. *American General Corp.* v. *Camp, supra* (190 A., at pages 230-231).

---

[5] That such statute is a part of the contract between the corporation and its stockholders, see *Adams* v. *United States Distributing Corp., supra* (184 Va., at page 149, 34 S. E. (2d), at page 251), and authorities there cited.

■ The principle that the provisions of the merger statute are a part of the contract between the corporation and the dissenting stockholder disposes of the contention of the appellee dissenters that they are entitled to interest by virtue of the interest statute. (Code, sec. 8-223.) This statute provides that, "In any suit in equity, or in an action or motion founded on contract, when no jury is impaneled, decree or judgment may be rendered for interest on the principal sum recovered, until such decree or judgment be paid; * * *." This statute, of course, does not contemplate or permit the allowance of interest in the decree or judgment contrary to the terms of the contract between the parties.

In *Skipwith* v. *Federal Water, etc., Corp.*, 185 Misc. 248, 56 N. Y. S. (2d) 804, a lower New York court, interpreting the Delaware merger statute, held that interest should be allowed as a matter of "simple justice." However, the highest court of Delaware, in the *Meade Case, supra,* interpreting its own statute, expressly rejected the holding and reasoning in the *Skipwith Case.* (See 58 A. (2d), at page 418.) The holding in the *Skipwith Case* was likewise rejected in *In re Janssen Dairy Corp., supra* (64 A. (2d), at pages 655, 656).

In the recent case of *Richmond* v. *Henrico County*, 185 Va. 176, 37 S. E. (2d) 873, we dealt with a question which is strikingly similar to that now before us. That case involved the proper interpretation of section 5222k of Michie's Code of 1942 (Acts 1924, p. 713), which in substance provided that a city annexing a subdivision should pay to the owners of such subdivision the "fair value," as of the date of annexation, of the public improvements and utilities constructed by the owners in such subdivision. Provision was made for the appointment of appraisers, in event of disagreement, to ascertain and report to the court such "fair value."

The city and the owners being unable to agree, appraisers were appointed and instructed to ascertain and report the "fair value" of the improvements as of the date of annexa-

tion. The trial court confirmed some of the appraisers' findings, but set aside others and made new findings of "fair value." It also awarded interest on the ascertained "fair value" of such improvements from the effective date of the annexation. In reversing that judgment with respect to the allowance of interest, we there said what is pertinent here:

"* * * The statute, which is alone the source of any recovery, does not provide for the payment of interest and consequently the appraisers' awards do not bear interest, certainly until the awards become a finality which, in the absence of adjustment, cannot be until the matter has run the gamut of the courts. Until such event, the claim is unliquidated. There would be no sum certain upon which interest could be computed.

"It was said in the case of *Stearns* v. *Mason*, 24 Gratt. (65 Va.) 484, 494: 'This court has repeatedly held that when accounts were unliquidated and disputed between the parties, interest ought not to be allowed.'

"After citing a number of cases in support of the above statement, the court said further: 'These cases show that the court ought not to allow interest when the claim, though just, is doubtful, or where the amount is unliquidated and uncertain.'

"Section 6259 of the Code of Virginia, known as the interest statute, has no application to this case.

"This is not an action on contract or for tort, nor is it a suit in equity, all of which processes are subjects of that section.

"This is a proceeding by way of petition, for the appointment of appraisers to do a specific thing, namely, to determine the fair value of certain utilities as of a certain time. It is purely statutory and the end to be attained is rather ideal until it becomes actual through the processes of the statute. Nothing is allowable outside of the statute. Fair value, in our notion of the statutory intendment, is, when ascertained, a sum certain, definite and fixed. If that sum is augmented by the addition of interest or anything else it is more than fair value and so more than the statute

allows." (185 Va., at pages 199, 200, 37 S. E. (2d), at pages 884, 885.)

While the statute involved in the *Richmond-Henrico Case* was not a part of the contract between the parties, as is the situation in the case now before us, the cases are identical in that the language of each statute negatives the allowance of interest on the "fair value" in one case, or the "fair cash value" in the other, prior to the date of the ascertainment of such value.

According to the briefs now before us the lower court was of opinion that under the principles announced in *Tobacco Products Corp.* v. *Plummer*, decided by Judge Moncure in the Chancery Court of the city of Richmond in 1933 (opinion not reported), and in which we refused an appeal without opinion on January 22, 1934 (161 Va. xvii), it was bound to allow interest to the appellee dissenters on the fair cash value of their stock from the effective date of the merger.

We have re-examined the record and opinion in the *Tobacco Products Case* and agree that what was said in that opinion supports the view of the lower court with respect to the allowance of interest in the present case. But we are of opinion that the present case should not be disposed of upon the holding in that case.

The *Tobacco Products Case* did not involve the merger of corporations under Code, section 3822-a, or its predecessor, section 3822. It involved the rights of stockholders in one corporation who did not assent to the sale of its entire assets to another corporation. That situation was governed by the terms of Michie's Code of 1930, section 3820-a. (Code of 1950, sections 13-83 to 13-86.) The latter section provided that in case of such sale a dissenting stockholder should have the same right as a stockholder who dissented from a corporate merger, and that the same procedure should be followed to ascertain the fair cash value of the dissenter's stock "as now or may be hereafter provided by statute in case of such stockholder of a merged or consolidated cor-

poration *and/or as now exists under the general law;* * * * ." (Italics supplied.)

We held in *Craddock-Terry Co. v. Powell*, 181 Va. 417, 443, 25 S. E. (2d) 363, 374, that the italicized words evinced a legislative intent that the statutory remedy afforded to a stockholder who dissented from such sale was not to be exclusive, and that such dissenter might pursue his equitable remedy as well. See also, *Adams v. United States Distributing Corp., supra* (184 Va., at page 147, 34 S. E. (2d), at page 250).

According to the opinion in the *Tobacco Products Case*, the chancellor thought that the merger statute likewise did not provide the exclusive remedy for dissenting stockholders. Accordingly, he reasoned that the rights in a merger case, as well as in a sale of assets case, were the same and should be decided on equitable principles which permitted the allowance of interest, as a matter of "simple justice," on the ascertained fair cash value of the dissenter's stock from the date of the sale or the effective date of the merger.

But, as we pointed out in *Adams v. United States Distributing Corp., supra* (184 Va., at page 147, 34 S. E. (2d), at page 250), the rights of the dissenting stockholders in the two cases are not identical. In the case of a merger there is no preservation to the dissenter of his "original equitable remedy," but his rights are governed entirely by the statute.

In so far as what was said in the *Tobacco Products Case* may conflict with our later holding in *Richmond v. Henrico County, supra*, and with the principles enunciated in the case now before us, it is hereby disapproved.[6]

■■ This court is not concerned with whether a dissenting stockholder, as a matter of "simple justice" or under equitable principles, is entitled to interest on the fair cash value of his stock from the effective date of the merger. It is for the legislature and not for the courts to say upon

---

[6] The holding in the *Tobacco Products Case* was considered and expressly disapproved in *Meade v. Pacific Gamble Robinson Co., supra* (58 A. (2d), at page 418).

what terms the consolidated or merged corporation should settle its differences with a dissenting stockholder. Our function is to construe the statute as written. In discharge of that function we hold that under the statute, as we interpret it, a dissenting stockholder is not entitled to interest on the ascertained value of his stock from the effective date of the merger.

The appellee members of the Adams-O'Hara group contend that The Pittston Company is estopped under either the doctrine of *res judicata* or the law of the case, or under the doctrine of inconsistent position, from denying on this appeal its liability for interest on the ascertained fair cash value of their stock from the effective date of the merger. Neither of these positions, in our opinion, is sound.

With respect to the claim of *res judicata* or law of the case, the appellee dissenters say that the lower court, in its decrees of December 6, 1944, and April 16, 1946, adjudicated that The Pittston Company should pay interest on the ascertained fair cash value of the stock "of all of the dissenters," and that that company did not appeal from such adjudication.

This argument overlooks two fundamental essentials in the application of the doctrine of *res judicata*: (1) It applies only to parties to the proceeding and their privies; and (2) The estoppel must be mutual. If one who asserts the estoppel was not a party to the prior proceeding and is not bound by the judgment relied on, the adverse party is likewise not bound. See Freeman on Judgments, 5th Ed., Vol. 1, section 428, p. 929 *ff*; *Anderson* v. *Sisson*, 170 Va. 178, 182, 196 S. E. 688, 689; *Unemployment Compensation Comm.* v. *Harvey*, 179 Va. 202, 210, 18 S. E. (2d) 390, 393.

As has already been said, on the second appeal we reversed the decree of April 16, 1946, on the ground then asserted by the Adams-O'Hara group that its effect was to bind them by the first appraisal proceeding, which culminated in the decree of December 6, 1944, to which these dissenters were not parties. Hence, we said, the latter decree was not *res judicata* as to or binding on these dissenters.

*O'Hara* v. *The Pittston Co., supra.* It necessarily follows that in so far as their rights are concerned, it likewise does not so operate against their adversary, The Pittston Company.

Moreover, the decree of April 16, 1946, which adjudicated that The Pittston Company must pay the appellee dissenters $55 per share for their stock with interest, and upon which they here rely, was at the instance of these dissenters "reversed and annulled," according to the terms of our mandate. *O'Hara* v. *The Pittston Co., supra.* Having been reversed, the decree was no longer operative as *res judicata* or the law of the case in favor of or against any of the parties. Freeman on Judgments, 5th Ed., Vol. 2, section 720, p. 1521 *ff*; 50 C. J. S., Judgments, section 625, pp. 50-51; *Id.*, section 702, pp. 157-158.

The claim of the appellee dissenters that The Pittston Company is estopped by its prior conduct to deny liability for such interest is based on these circumstances:

(1) It acquiesced in the decree of December 6, 1944, ordering the payment of interest from the effective date of the merger on the fair cash value of the stock of other dissenters. It subsequently undertook to hold the members of the Adams-O'Hara group to these terms and acquiesced in the decree of April 16, 1946, which had that effect.

Since we held on the second appeal (*O'Hara* v. *The Pittston Co., supra*) that the Adams-O'Hara dissenters were not parties to the first appraisal which culminated in the decree of December 6, 1944, allowing interest to the other dissenters, the position of The Pittston Company with respect to the entry of that decree does not work an estoppel against it in this, the second appraisal proceeding.

The doctrine of estoppel by inconsistent position does not apply to a prior proceeding in which the parties are not the same. 19 Am. Jur., Estoppel, section 73, p. 711; 31 C. J. S., Estoppel, section 117, p. 372 *ff*.

In its unsuccessful effort to hold the members of the Adams-O'Hara group to the terms of the decree of December 6, 1944, The Pittston Company took no position with

reference to its liability for interest as such. It claimed that under our opinion on the first appeal (*Adams* v. *United States Distributing Corp., supra*), the members of the Adams-O'Hara group were entitled to receive precisely what the lower court had adjudicated that the other dissenters were entitled to receive. Identity of treatment of the Adams-O'Hara group, as measured by what had been paid to the other dissenters, precluded The Pittston Company from taking the position that it was not bound to pay interest to the latter group.

Indeed, the lower court announced in its opinion that the decree of April 16, 1946, holding the members of the Adams-O'Hara group to the terms of the decree of December 6, 1944, was based upon such identity of treatment. It differed from The Pittston Company's application of the principle only to the extent that it allowed interest to the date of payment, whereas The Pittston Company had insisted that interest should stop running on October 22, 1944, as in the case of the other dissenters.

Not until after our opinion on the second appeal, in which we reversed the decree of April 16, 1946 (*O'Hara* v. *The Pittston Co., supra*), was it made clear to these litigants and the lower court that the members of the Adams-O'Hara group were not bound to receive precisely what the other dissenters had gotten as the result of the first appraisal.

(2) Next, it is said, in its original answer to the petition of the members of the Adams-O'Hara group for a new appraisal, The Pittston Company took the position that it was liable for interest from the effective date of the merger until October 22, 1944, and not until its amended answer was filed did it take the position that it was not liable for interest prior to the date of the judgment confirming the appraisal and fixing the fair cash surrender value of the stock.

This change of position in the pleading of The Pittston Company was with respect to a question of law and was made before the appraisers' report had been acted on.

A person who has taken an erroneous position on a question of law is ordinarily not estopped from later taking the correct position, provided his adversary has suffered no harm or prejudice by reason of the change. *Spandorfer* v. *Cooper*, 141 Va. 792, 799, 800, 126 S. E. 558; 31 C. J. S., Estoppel, section 117, pp. 372, 373, and cases there cited.

Here there is no showing that the Adams-O'Hara dissenters were in any way prejudiced by this change of position on the part of The Pittston Company in its pleading. They say in their brief that "had Pittston assumed this position before the appraisal, the Adams-O'Hara group could have urged that the appraisers' award include interest."

The ready answer to this contention is that under the statute and the order appointing the appraisers, they were authorized to determine "the fair cash value of the stock" as of the effective date of the merger. It was no concern of theirs nor within their province to determine whether interest should be paid on such value after that date.

(3) Finally, it is said, in its settlement with other dissenting stockholders The Pittston Company paid interest on the value of the stock from the effective date of the merger.

We know of no principle of law which holds that a party who settles with an adversary on certain terms in one proceeding is bound to settle upon the same terms with other parties in another proceeding, even though the litigation in the two instances may have arisen out of the same subject-matter.

For these reasons the decree appealed from is reversed and the cause remanded for the entry of a proper decree in accordance with the principles here announced. The appellant, The Pittston Company, will recover its costs expended on this appeal.

*Reversed and remanded.*

HUDGINS, C. J., dissenting.

It is with deference that I dissent from the opinion of the

majority, and submit herewith some of the controlling reasons therefor.

The only question presented is whether holders of minority stock who dissented from a merger of two corporations are entitled to interest on the fair cash value of their stock from the date of merger, or from the date of the judgment on the appraisers' report.

In my opinion this is not an open question in Virginia. To substantiate this conclusion, I am citing below decisions of this court and other authorities indicating that pursuant to the former construction of the merger statutes, dissenting stockholders were entitled to receive interest on the fair cash value of their stock from the date of the merger until paid.

· The pertinent language of the statutes (Sections 3820a and 3822 of Michie's 1942 Code) that governs the decision in this case was construed in *Tobacco Products Corp.* v. *Plummer*. While the writ of error in the *Plummer Case* was refused, the able opinion written by the late William A. Moncure, Judge of the Chancery Court of the City of Richmond, was approved by this court.

In June, 1932, the minority stockholders of the *Tobacco Products Corporation* proceeded under the sale and merger statutes to have the fair cash value of their stock ascertained. The appraisers in their report fixed the fair cash value at $11.00 a share as of February 10, 1932, the date of the merger. The learned chancellor, in affirming their report, allowed interest from the date of the merger, or sale of the corporate assets. The pertinent parts of Judge Moncure's opinion are quoted below. He states the precise question thus:

"Does the $11 share value carry interest from February 10, 1932, or does it only carry interest from the judgment of the Court established (ing) that value?

"It is contended on behalf of the Corporation that Section 3822 of the Code of Virginia does not provide that the award shall bear interest, but in effect expressly provides what the dissenting stockholder shall receive, when it says, he 'shall

be entitled to receive from the vendor corporation the fair cash value of the stock as of the day before the sale of all of the assets of said corporation was authorized by the written consent of the holders of two-thirds of all its issued and outstanding stock.' And that the statute provides for the appointment of three appraisers whose duty it is to investigate the condition of the corporation and report to the Court, 'the fair cash value of the stock of such dissenting stockholders as of the day before the sale of all of the assets of said corporation was authorized by the written consent of the holders of two-thirds. of all its issued and outstanding stock.' Then counsel for the Corporation points out that the statute provides that, 'the court if of opinion that the valuation is just shall confirm the same and the amount thereof. And in any case in which the report of the appraisers is confirmed as hereinabove directed, the amount thereof shall immediately become and be a final judgment of the Court against the vendor corporation and may be collected &c.' Then it is contended in behalf of the Corporation that even if the language of Section 3822 does not expressly negative the right of dissenting stockholders to interest prior to confirmation the language should be so construed under the settled principle that interest cannot be allowed upon an unliquidated demand. * * *

"Counsel for the Corporation cite the following cases as directly establishing his contention against the allowance of interest: *In re Erlanger*, 237 N. Y. 159, 142 N. E. 571; *Trask* v. *Peekskill Plow Works*, 6 Hun (N. Y.) 236; *Shields* v. *Anderson*, 3 Leigh (30 Va.) 729.

"Frankness compels me to admit that the *Erlanger Case* appears to be authority for his claim against the allowance of interest until from the judgment of. the Court on the award. On the other hand, the *Trask Case* seems to be authority for the allowance of interest only from the report of the appraisers.

"The language of the New York statutes concerning corporations are not identical with the statutes on the subject in Virginia, and as the liberal policy in Virginia, Section

6259 of the Code of Virginia, authorizes the allowance of interest in certain enumerated cases, the New York cases ought not to be binding, if the equity and justice of the situation justify the conclusion that the dissenting stockholders should have interest allowed at an earlier date than allowed by the *Erlanger Case,* and the *Trask Case.*

"The report of the appraisers fixed the value of the stock as of February 10, 1932, at $11.00 the share and then added that they, 'Did not take into consideration the lapse of time since that date, but assumed that interest at six per centum per annum would run on the award from February 10, 1932.'

"The appraisers recognized, no doubt, the justice of the right of the dissenting stockholders to receive interest from February 10, 1932 and would have made the report carry interest from that date, but for the language of the Court order of their appointment.

"Every stockholder has an inherent interest in the assets and property of the Corporation in proportion to the number of his shares of stock. If the Corporation is dissolved he has a like property right in the assets and property of the dissolved corporation, and may demand such share in distribution.

"If a stockholder is a dissenter, and the corporate property is sold, he does not lose his property right, that property right, whether legal or equitable, should remain his until its value is paid to him.

"Such dissenter has the right under Sections 3820a and 3822 Code of Virginia to proceed to have the value of his property right ascertained and paid to him; but there is, I think, reserved to him (the right) under general law to go into equity and have his property right valued and paid to him.

"In speaking of the summary remedy given by statute to a dissenting stockholder in the case of *Winfree* v. *Riverside Cotton Mills Co.,* 113 Va. 717, at page 724, 75 S. E. 309, it is said: 'While this summary remedy is given by statute, and the appellant might have pursued it, he was

not bound to do so. Although the consolidating statute took away from him the right to defeat the consolidation by refusing to consent to it, it did not take away from him the right to refuse to surrender his stock for stock in the new corporation, or refuse to take anything for it less than its actual value at the date of the consolidation.' The demurrer to the bill in the *Winfree Case* was therefore overruled.

"Is it justice that a dissenting stockholder whose property right remains until its value is ascertained and paid to him, be paid only the value of his stock as of the date of sale, without interest, notwithstanding the intervening time between the sale and payment for his stock, the large part of the property sold has at all times yielded large amounts in. rental revenue?

"I do not think that would be justice. * * * *

"If the dissenting stockholders had filed a bill in equity to have their rights fixed, the value of their stock ascertained and decreed them, can it be said that the Court would have no right and power to consider the lapse of time since February 10, 1932, in determining the amount to be paid the dissenting stockholders?

"I think the Court would have such power. I do not think that the summary remedy given a dissenting stockholder as provided by statute was intended, or should be construed as diminishing the amount he should receive if he were in a court of equity.

\*    \*    \*    \*    \*    \*

"Just here it may not be inappropriate to make another quotation, in *Miller* v. *Robertson*, 266 U. S. 243, at page 258, 45 S. Ct. 73, 69 L. ed. 265, it is said, 'One who has had the use of money owing to another justly may be required to pay interest from the time payment should have been made. Both in law and in equity interest is allowed on money due. *Spalding* v. *Mason*, 161 U. S. 375, 16 S. Ct. 592, 40 L. ed. 738. Generally interest is not allowed on unliquidated damages. *Mowry* v. *Whitney*, 14 Wall. (81 U. S.) 620, 20 L. ed. 860. But where neces-

sary to arrive at fair compensation, the court in the exercise of a sound judicial discretion may include interest, or its equivalent, as an element of damage.'

"In Minors Institute, Vol. 4 part 1, pp. 819-21 after stating the common law rule on the allowance of interest, says, 'Our courts in Virginia, with some aid from the legislature have long established a different doctrine; namely, that it is natural justice that he who has the use of anothers money should pay interest on it. . .' The growing favor of allowing interest in Virginia as a result of legislation is shown if provision on the subject in Code of 1819 page 508 is compared with the provisions of the Code of 1849.

"By the Code of 1849 interest in tort cases was for the first time permitted.

"A further comparison of the Code of 1849 with the Code of Virginia 1919 shows that this favorable attitude in the allowance of interest continued to grow.

"Section 6259 Code of Virginia, 1919, permits the jury in any case to fix the time from which interest shall run; and the section further provides, 'In any suit in equity, or in an action or motion founded on contract, where no jury is impaneled, decree or judgment may be rendered for interest on the principal sum recovered, until such decree or judgment is paid.'

"The next consideration is, does this obligation to pay the dissenting stockholders the fair cash value of their stock as of February 10, 1932, arise out of contract, or does it arise as a tort.

"If the dissenting stockholders right arose as a tort, then there was a conversion, and it seems that in all cases of conversion, interest runs from the time of the conversion.

"Fletcher on Corporations, Section 5120, says, 'Generally the plaintiff is entitled to interest on the value of the stock from the time of the conversion to the time of the verdict.'

"*Doyle* v. *Burns*, 123 Iowa 488, 99 N. W. 195, says, 'With reference to the conversion of property in general, we have heretofore adhered to the rule announced by the great weight of authority that the measure of damage is the

value of the property at the time of the conversion, with interest.' In *Vance* v. *Vandercook Co.*, 170 U. S. 468, at page 480, 18 S. Ct. 645, 42 L. ed. 1111, Mr. Justice White stated the rule to be, 'The general rule of damage is the value of the property taken, with interest from the time of the taking down to the trial.' To the same effect are these cases: *Arkansas Valley Land, etc., Co.* v. *Mann*, 130 U. S. 69, 9 S. Ct. 458, 32 L. ed. 854; *Jones* v. *Missouri-Edison Elec. Co.* (C. C. A.), 233 F. 49; *Pittsburgh, etc., Gas Co.* v. *Pentress Gas Co.*, 84 W. Va. 449, 100 S. E. 296, 7 A. L. R. 901; 8 Ruling Case Law, page 537 and note.

"From the authorities just cited it may be stated that the law is, in case of conversion, the person whose property is converted is entitled to recover the fair cash value of the property at the time of the conversion with interest at the established rate from the date.

"What the majority stockholders did was, they lawfully appropriated the dissenting stockholders property to their own and expressed purpose. And the law gives the minority stockholders the right to be paid just compensation for their property thus lawfully appropriated.

"Whether the stock is tortiously taken, or taken under the statute, in either case it is taken against the will of the minority stockholder, the dissenter, and it seems to me that the value of the property, just compensation, should be the same in each case.

"Now this question presents itself, is not the duty to pay the dissenting stockholders·for the value of their stock, a duty founded on contract?

"I think it is.

"In the case of *Winfree* v. *Riverside Cotton Mills Co.*, 113 Va. at page 717 [722], Judge Buchanan in stating the status of the corporation whose charter was amended after the present constitution became effective, said, 'The charter which is to be so held is not only a contract between the State and the corporation, but is also a contract between the state and the stockholders, the corporation and the stockholders, and between the stockholders themselves.'

"Therefore, in like manner, the charter of Tobacco Products Corporation, the chart by which the stockholders conducted their undertakings and paid for their stock, was a contract between the corporation and the stockholders, and between the stockholders themselves.

"The two-thirds majority met and agreed upon what they would do; passed resolutions to that effect; among the things they agreed to do were to sell the assets, and dissolve the corporation. In doing this they agreed to dissolve this existing contract between the stockholders. The liability to the dissenting stockholders certainly was founded by reason of this breach of contractual relation.

"Among the things necessary and required by law in carrying out this dissolution of the stockholders contractual relation was the payment to the dissenting stockholders a fair cash value for their stock, and I think this was a contractual duty and undertaking. Section 6259, Code of Virginia, provides,

" 'In any suit in equity or in an action or motion founded on contract, where no jury is impaneled, decree or judgment may be rendered for interest on the principal sum recovered.'

"Therefore, exercising that discretion which I think the situation demands, and the law authorizes, it is my opinion that the petitioning stockholders of Class A stock should receive therefor $11.00 the share with interest thereon at the rate of six per centum the year, from the 11th day of February 1932 (that being the day their property was sold and thereby appropriated to the use of the majority)."

The judgment of this court refusing the appeal was entered on the 22nd day of January, 1934, and was in the following language:

"The petition of the Tobacco Products Corporation of Virginia for an appeal from and supersedeas to a decree entered by the Chancery Court of the city of Richmond on the 10th day of October, 1933, in a certain chancery cause then therein depending herein Edward T. Plummer and others were plaintiffs and the said petitioner was de-

fendant, having been maturely considered and transcript of the record of the decree aforesaid seen and inspected, the court being of opinion that the said decree is plainly right, doth reject the said petition, the effect of which is to affirm the decree of the said chancery court."

I have adopted the unusual course of quoting at length from the opinion of Judge Moncure and the order of this court refusing to review the case in order to remove all doubt of the fact that the same argument advanced in this case against the allowance of interest from the date of the merger was advanced in the *Tobacco Products Corporation Case* and was rejected by unanimous vote seventeen years ago.

In 21 Va. L. Rev., p. 825, Judge Moncure's opinion in this case was discussed at length, and additional reasons were given for approval of what is there referred to as the "Virginia Doctrine." The article concludes as follows: "The instant decision, therefore, appears to be eminently sound in holding that the stockholder becomes a creditor of the corporation as of the appraisal date, and that the obligation bears interest from that time."

The case of *Richmond* v. *Henrico County*, 185 Va. 176, 37 S. E. (2d) 873, is relied upon to support the argument set forth in the majority opinion. In my opinion the facts in that case are dissimilar to the facts in this case. There the court was not dealing with a right arising under a contract, but a right created by statute; hence the court applied elementary principles and strictly construed the statute creating the right.

In the case now under consideration we are dealing with a contractual right. At least it grows out of contractual relations and, without the statute, these rights would be protected in a court of equity.

The reasons advanced to support the conclusion of the majority is not in accord with the former decisions of this court, or with its construction of legislative enactments dealing with the subject. This is particularly true of that part of the opinion in which it is said: "This court is not con-

cerned with whether a dissenting stockholder, as a matter of 'simple justice' or under equitable principles, is entitled to interest on the fair cash value of his stock from the effective date of the merger. It is for the legislature and not for the courts to say upon what terms the consolidated or merged corporation should settle its differences with a dissenting stockholder."

Prior to the decision in *Adams* v. *United States Distributing Corp.*, 184 Va. 134, 34 S. E. (2d) 244, 162 A. L. R. 1227, the general rule was that a dissenting stockholder had the choice of one of two remedies by which he could enforce his rights—that is, he could invoke the plenary powers of a court of equity, or he could proceed under the statute.

I voted for that opinion because I thought that by so doing it would avoid the possibility of a multiplicity of suits in different forums and would render the administration of justice more orderly and expeditious. In so doing, I relied upon the views expressed by Judge Moncure in the *Tobacco Products Corporation Case*, to the effect that the statutory remedy was not intended to, nor would, be construed as diminishing the amount such stockholders would receive if the right to apply to a court of equity had been preserved.

The original merger statute (Acts 1902-3-4, p. 437) has been amended and readopted several times. (Acts 1922, p. 625; Acts 1944, p. 528). However, it is to be noted that there has been no substantial change in the pertinent language declaring that the dissenting stockholders "shall be entitled to receive from such consolidated or merged corporation his fair cash value of his stock as of the day before the vote for the agreement of consolidation or merger of his corporation was so cast as aforesaid, which fair cash value if not agreed on between the dissenting stockholder and the consolidated or merged corporation shall be determined in the manner" prescribed.

This was the language construed by Judge Moncure in the *Tobacco Products Corp.* v. *Plummer*, and by this court in *Craddock-Terry Co.* v. *Powell*, 181 Va. 417, 25 S. E.

(2d) 363. In the latter case the trial court decided that interest should not begin to run until a year after the consolidation, or sale of the corporate property. In modifying that decree, we said: "Interest will be allowed on the total amount of recovery from January 23, 1939, *the date the old corporation transferred the stock to the new corporation,* instead of January 23, 1940." (Italics supplied). This modification was made under the belief that this court was committed to the doctrine that interest should be allowed the dissenting stockholders from the date of consolidation, or sale, as was held in the *Plummer Case.* It is true that this particular point was not stressed in the briefs, but after the opinion was rendered, an elaborate petition for rehearing was filed, in which this particular point was argued at length. This court, after careful consideration of the petition refused a rehearing.

Judge Burks stated in *Kelly* v. *Trehy,* 133 Va. 160, 112 S. E. 757, that "Under well settled rules of construction, 'when a statute has been construed by the courts and is then re-enacted by the legislature, the construction given to it is presumed to be sanctioned by the legislature and therefore becomes obligatory upon the, courts.' *Mangus* v. *McClelland,* 93 Va. 786, 22 S. E. 364; *Draper* v. *Commonwealth,* 132 Va. 648, 111 S. E. 471."

In the same opinion Judge Burks invoked the doctrine which should be controlling in this case, namely: "It is in the interest of the public that there should be stability in the laws by which they regulate their conduct. * * * the construction of statutes ought not to vary with every change in the personnel of the appellate court * * * ."

The former construction of the pertinent language of this statute was fair, reasonable and made after careful consideration. The learned chancellor who decided this case in the lower court relied upon the former construction in allowing interest from the date of merger. The failure of the majority to adhere to former decisions of this court will work a great hardship upon appellees, and, indeed, will penalize them for asserting their rights in the

lower court and in this court. Every dissenting stockholder, except appellees, has received interest on the fair cash value of his stock since December, 1942, to different dates of payment. The merged corporation has had the use of appellees' money ($41,580.00) since 1942, and, by order of the majority, will not be required to pay anything for nine years' use of it.

GREGORY, J., concurs in this dissent.