VOUGHT ET AL., APPELLANTS, *v.* REPUBLIC-FRANKLIN INSURANCE CO., APPELLEE.[*]

(No. 6793—Decided July 3, 1962.)

*Mr. Vern E. Davis,* for appellants Lester Vought and Charlotte Vought.

*Mr. David E. Morgan,* for appellant C. A. Daugherty.

*Mr. Walter Dressel,* for appellants Ralph Detrow, John Jaggers, Mary Wikoff, Edward Dressel and Florence Dressel.

*Messrs. Key, Butler, Harrison & Carlile,* for appellee.

DUFFEY, P. J.   This is an appeal on questions of law from an order of the Common Pleas Court of Franklin County, Ohio, setting, and giving judgment for, the value of stock of dissenting shareholders under the provisions of Section 1701.85, Revised Code.

Appellants dissented from the merger of the company. Pursuant to provisions in Section 1701.85, Revised Code, the

---

[*]Motion to certify the record overruled (37856), March 6, 1963.

trial court appointed three appraisers. Thereafter, a majority of two filed a report, and the third filed his minority report. A hearing was held on the motions for confirmation. Both parties had an opportunity to present evidence and argument. Upon consideration of the reports, evidence and arguments, the court confirmed the majority report, and set the value at $3.28 per share.

A dissenting shareholder is entitled to the "fair cash value" of his shares. Effective in 1955 (126 Ohio Laws, 432, 485), Section 1701.85, Revised Code, was amended by the addition of paragraph (C) which provides as follows:

"(C) The fair cash value of a share is hereby defined as the amount which a willing seller, under no compulsion to sell, would be willing to accept and a willing buyer, under no compulsion to purchase, would be willing to pay and shall be fixed as of the day prior to that on which said vote was taken, provided that in no event shall the amount thereof exceed that specified in the demand of the particular shareholder. There shall be excluded from such value any appreciation or depreciation resulting from the proposal acted upon at said meeting."

Appellants' principal contention is that this provision does not apply where there is "no willing buyer-willing seller transactions as of the day before the merger vote." It is appellants' view that in such a case the standard of valuation is "intrinsic value."

Prior to the adoption of Section 1701.85, Revised Code, the Supreme Court of Ohio had developed a unique concept called "intrinsic value." *Roessler* v. *Security Savings & Loan Co.* (1947), 147 Ohio St., 480. That decision has been criticized as confusing the existence of an actual market with the standard of a hypothetical market value. "Intrinsic value" as defined in that case is very analogous to the concept of a hypothetical market as used in so many fields of valuation.

Under the *standard* of a hypothetical market of willing buyers and sellers, an actual market is simply *evidence* of market value. Such evidence is more or less persuasive depending upon circumstances such as the activity in the market, the time relationship of transactions, comparableness of items sold, and other factors in that particular market. The objective in adopting the standard is not to measure value by an actual market

but rather by a hypothetical one. Such a standard generally will permit evidence to be introduced as to any factor which a reasonable man would take into consideration in determining value. Actual market conditions are, therefore, open to proper interpretative evidence.

Under some conditions certain types of evidence may be so persuasive as to be entitled to a legally preferred status, and other evidence could become too speculative. If a sufficient actual market existed for identical items, in which active trading was occurring, such evidence might be controlling, and other methods of evidencing value (for example, original cost or capitalization of earnings) may be excludable. This point would probably be true in most cases involving the valuation of stock which is actively traded on the New York Stock Exchange. On the other hand, where no suitable actual market exists, various other methods of evidencing market value are available, and elaborate rules have been developed as to their acceptability and weight.

Of course, it is true that in the absence of a suitable actual market, valuation is difficult and the evidentiary problem can become very complex. However, while the proper *evidentiary methods* vary with circumstances, it is apparent that the *standard* or test of a hypothetical market is capable of almost universal application in any legal problem of valuation. We, therefore, do not believe that the standard adopted by the Legislature is in any way "impossible," nor do we believe that "it leaves in cases such as this a penumbra in which discretion is uncontrolled in the appraisers."

Upon examination of Section 1701.85, Revised Code, and the comments of the committee of prominent men who prepared it, we hold that paragraph (C) was a legislative overruling of the *Roessler case* by a deliberate adoption of the hypothetical market value standard, and that *standard* is applicable to the valuation of shares held by dissenting shareholders regardless of the existence or nonexistence of comparable sales in a suitable existing actual market.

The first assignment of error is that the court failed to properly instruct the appraisers as to their duties. However, in the brief appellants confined their contention to the standard of valuation. From what has already been said, it is apparent

that it would have been error to instruct the appraisers in the manner for which appellant contends. Since appellants have not chosen to brief or argue the sufficiency of the instructions in any other respect, we express no opinion on their adequacy in general.

In the second assignment appellants again confine their argument to the application of the *Roessler case* and, accordingly, the assignment is overruled.

The third assignment is that the court erred in confirming the appraisal report since the report was contrary to law. Again, the brief is confined to the *Roessler case* and does not generally attack the sufficiency of the report. There being no assignment of error challenging the sufficiency or weight of the evidence, we express no opinion on the value set by the appraisers and the trial court. The fourth assignment must be overruled for the same reason.

The fifth assignment challenges the court's award of interest. The entry sets the rate of interest at 6 percent. The date for computation is set for January 18, 1960, the date of shareholders' approval of the merger. However, the court computed the interest on 28c only. This is the difference between the company offer of $3 and the value found of $3.28 per share.

Section 1701.85(B)(2), Revised Code, provides, in part: "* * *

"* * * judgment shall be rendered against the corporation for the payment of the amount of such fair cash value, with interest at such rate and from such date as the court fixes in said judgment. * * *"

In view of the wording of the statute and the committee's comments, the trial court had discretion only as to the rate and date. The basis for the computation of the interest is the total award.

The judgment of the Common Pleas Court will be modified to provide for interest at 6 per cent from January 18, 1960, on the entire amount, and, as so modified, is affirmed. An entry granting final judgment as indicated may be submitted to this court.

*Judgment modified and, as modified, affirmed.*

DUFFY and BRYANT, JJ., concur.