NIMMONS, Judge.
The Bank of Central Florida (“Bank”), a state chartered commercial bank with principal offices in Orlando, appeals from a final order of the Comptroller of the State of Florida, as head of the appellee, Department of Banking and Finance (“Department”). The order determined the value of Jackman’s and Staudt’s dissenting shares of stock in the Bank of Central Florida in connection with the latter’s merger with another bank. The Department, Jackman and Staudt are appellees herein.[1] We affirm.
In October, 1981, a plan of merger for the Bank was approved by the Department. Under the plan, Jackman and Staudt, who owned approximately nine percent of the Bank’s outstanding shares, would be entitled to receive shares of stock in the successor bank, or be paid $25 for each share of stock held. Because they disagreed with these options, Jackman and Staudt elected to pursue the remedies available under Section 658.44(5), Florida Statutes (1981). Since the Bank and Jackman and Staudt had not, within ninety days of the merger, agreed upon the voluntary appraisal procedure afforded by the statute, the Department, in September, 1982, ordered an appraisal of the value of the dissenting shareholders’ stock. The Department advised the parties that the value of the dissenting shares would be determined pursuant to an appraisal to be performed by Blackstock and Co., Inc. (“Blackstock”), an investment banking firm, commissioned by the Department pursuant to Section 658.-44(5), Florida Statutes (1981), which provides:
(5) The value of dissenting shares of each constituent state bank or state trust company, the owners of which have not accepted an offer for such shares made pursuant to subsection (3), shall be determined as of the effective date of the merger by three appraisers, one to be selected by the owners of at least two-thirds of such dissenting shares, one to be selected by the board of directors of the resulting state bank, and the third to be selected by the two so chosen. The value agreed upon by any two of the appraisers shall control and be final and binding on all parties. If, within 90 days from the effective date of the merger, for any reason one or more of the appraisers is not selected as herein provided or the appraisers fail to determine the value of such dissenting shares, the department shall cause an appraisal of such dissenting shares to be made which shall be final and binding on all parties. The expenses of appraisal shall be paid by the resulting state bank or trust company.
In September, 1982, Jackman and Staudt filed a circuit court suit in Leon County against the Bank and the Department alleging the unconstitutionality of Section 658.44(5) regarding the procedure for the determination of the value of dissenting shares. That suit culminated in a final judgment in which the circuit court construed the statute in such a way as to sustain it against constitutional attack. Essentially, the final judgment construed the statute so as to authorize the Department to reach a final determination of the value of the shares of stock only after affording the shareholders and the Bank, at the request of either, a formal Section 120.57(1), Florida Statutes, hearing before an independent hearing officer. No appeal was taken from such final judgment and the parties hereto have not sought to question the correctness of the above construction of the statute by the circuit court.[2] *744 We therefore, at least for purposes of consideration of the instant administrative appeal, assume the correctness of the circuit court’s construction of Section 658.44(5).
After completion of the Blackstock appraisal, which valued the stock shares at $27.63 per share, the Department issued its notice of intent to adopt such appraisal as evidence of the value of the dissenting shares. Upon notification thereof, Jack-man and Staudt requested a formal hearing pursuant to Section 120.57(1). The hearing was held before a hearing officer of the Division of Administrative Hearings. The Bank intervened and participated in such hearing.
At the hearing, evidence was received regarding three different valuations: (1) $27.63 per share by Blackstock; (2) $27.34 per share by Ronald W. Goff; and (3) $46.59 per share by Marc I. Perkins. In his recommended order, the hearing officer recommended the Perkins valuation of $46.59.
In its 29 page final order, in which it accepted the hearing officer’s recommendation of a valuation of $46.59 per share based upon the Perkins valuation, the Department rejected some of the hearing officers’ detailed findings which were supportive of the Perkins report. The Bank says that the Department’s final order shows that the Department erroneously felt that it was legally obligated to accept the hearing officer’s selection of the Perkins valuation notwithstanding the Department’s proper exercise of its authority in rejecting some of the factual findings underpinning the hearing officer’s recommendation of the Perkins valuation over the other appraisals.
Our review of the Department’s final order and the recommended order has convinced us that the Department was indeed acting within the bounds of its authority, under the principles enunciated in McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977),[3] in rejecting some of the hearing *745 officer’s factual findings. However, the final order, fairly read, indicates the Department’s own preference for the Perkins valuation even without some of its factual underpinnings which had been rejected by the Department, and there was competent substantial evidence still remaining to support the final order’s selection of the Perkins valuation.
Although portions of the Department’s lengthy final order recite in various ways the legal principle requiring the agency to accept findings of fact which are supported by competent substantial evidence, and which portions of the order, without more, might be construed to suggest that the Department was laboring under the erroneous assumption that it was still bound to accept the Perkins valuation notwithstanding its justified rejection of some of its underpinnings, it is apparent from the entirety of the final order that the Department itself concurred in the selection of the valuation recommended by Perkins.[4] We, therefore, affirm the final order’s determination of the value of the dissenting shares.
On cross-appeal, Jackman and Staudt claim that the Department erred in not awarding: (1) “prejudgment interest” from December 31, 1981, the date of the bank merger, to the date of the Department’s final order; (2) “postjudgment interest” from and after the date of the final order; and (3) costs of the proceedings. The Department’s denial thereof, which was consistent with the hearing officer’s recommendations, is affirmed.
The administrative proceeding which is the subject of this case is a creature of statute designed to provide a method by which the value of the shares of dissenting stockholders may be determined where there is disagreement as to such value. Although Section 654.44 provides that the resulting bank in a merger situation shall bear the costs of an appraisal requested by the dissenting shareholders, no mention is made of costs generally or of interest, and we decline to construe the statute to so provide.
Jackman and Staudt rely, in part, upon U.S. Parts, Inc. v. Tillis, 432 So.2d 674 (Fla. 5th DCA 1983), for the recovery of prejudgment interest. Tillis involved a minority shareholder’s lawsuit to compel the corporation to purchase a proportionate number of their shares as were purchased from majority shareholders. Unlike the instant proceeding, interest was awarded the minority shareholders only because of a legal wrong committed by the majority shareholders. This result is consistent with the weight of authority that, in the absence of specific statutory authority, interest is awarded only in those cases where some legal wrong (such as breach of contract or conversion) has been committed. Meade v. Pacific Gamble Robinson Co., 58 A.2d 415 (Del.1948); In Re Janssen Dairy Corp., 2 N.J.Super. 580, 64 A.2d 652 (1949); Pittston Co. v. O’Hara, 191 Va. 886, 63 S.E.2d 34 (1951); American General Corp. v. Camp, 171 Md. 629, 190 A. 225 (1937); but cf. Southdown, Inc. v. McGinnis, 89 Nev. 184, 510 P.2d 636 (1973). In the case at bar, the action of merging the two banks did not constitute a legal wrong to the dissenting shareholders and Section 658.44 governing such mergers makes no provision for the payment of interest on the valuation ultimately determined.
The shareholders/appellees also rely upon the theory that the proceeding *746 below should be viewed as an action ex contractu and claim that they should be awarded interest under authorities such as Posner v. Flink, 393 So.2d 1140 (Fla. 3rd DCA 1981); and Bergen Brunswig Corp. v. State of Florida Department of Rehabilitative Services, 415 So.2d 765 (Fla. 1st DCA 1982). If the subject proceeding were indeed an action ex contractu, such authorities would appear to support an award of prejudgment interest. See Bergen Brun-swig Corp. at 767. However, we decline to view this proceeding as such an action. See Meade v. Pacific Gamble Robinson Co., supra, and Pittston Co. v. O’Hara, supra.
Jackman and Staudt also contend that they are entitled to what they refer to as “postjudgment” interest on the value of their stock from the date of the final order until the total amount of such value is paid. We reject their contention. A final order entered by the Comptroller, as head of the Department of Banking and Finance, is not the equivalent of a money judgment rendered by a court in this State. Section 55.03(1), Florida Statutes (1983),[5] upon which Jackman and Staudt rely, provides only that a “judgment or decree” shall bear interest. Such does not include administrative orders such as is involved in the instant case. Although administrative orders entered in adjudicatory proceedings are generally regarded as quasi-judicial in nature, see e.g. State ex rel Burr v. Seaboard Air Line Ry. Co., 93 Fla. 104, 111 So. 391 (1927), administrative orders are generally regarded as not having the force or effect of a final judgment or decree of a court. See 1 Fla.Jur.2d Administrative Law, § 91; Florida East Coast Ry. Co. v. State, 79 Fla. 66, 83 So. 708 (1920); Ex Parte Taylor, 68 Fla. 61, 66 So. 292 (1914); Farrell v. Amica Mut. Ins. Co., 361 So.2d 408 (Fla.1978).
The dissenting shareholders also claim that the final order should have made provision for an award of costs. We hold that they were not entitled to such an award, just as the Bank would not have been entitled to recover costs in the event that it had prevailed on the issue of valuation. Section 658.44, upon which the proceedings below were based, makes no provision for the payment of costs although, as earlier noted, Section 658.44(5) does require that the Bank pay for the cost of the appraisal conducted by the Department. Moreover, Section 57.041(1), Florida Statutes (1983),[6] has no application to an administrative proceeding such as that involved in the instant case.
AFFIRMED.
THOMPSON and BARFIELD, JJ., concur.

. Although the Department is an appellee, it has filed herein a "Notice of Intent to Waive Answer Brief and Oral Argument” in which the Department has advised the court that it did not intend to participate in this appeal. Thus, the Department neither submitted a brief nor participated in oral argument.

. The relevant portion of the circuit court’s final judgment is as follows:
1. Section 658.44(5), Florida Statutes, as herein construed, is found to be constitutional:
(a) Under this statute the value of dissenting shares shall be determined by the Depart *744 ment, upon failure of agreement of appraisers selected by the bank and the owners and a third appraiser to be selected by the other two. The language of the statute stating, "the department shall cause an appraisal of such dissenting shares to be made which shall be final and binding on all parties" is construed to mean that the head of the Department shall pursue steps to acquire evidence of the value of the shares and shall, pursuant to due process procedures, render a finding of such value. Such may include the procural of an appraisal by an independent competent appraiser whose findings shall be made known to the bank and to the shareholders before any final determination of value is made by the Department. The bank and the shareholders shall have an opportunity to present evidence of such value, and upon request of either party, a formal hearing shall be held pursuant to Section 120.57(1), Florida Statutes, before an independent hearing officer. Such officer shall consider all evidence presented by the Department and the parties and shall make a finding of the value of the dissenting shares on the basis of the more persuasive and convincing force and effect of all the evidence. The Department shall cause a final determination to be made of the value of such shares in a form constituting final agency action, which shall be appealable pursuant to Section 120.68, Florida Statutes.
(b) In a Section 120.57(1) administrative hearing all parties are entitled to conduct discovery, present evidence, cross-examine witnesses and present argument.
(c) The foregoing procedures are deemed adequate to afford constitutional due process.

. In McDonald, this court stated in pertinent part:
In determining whether substantial evidence supports the agency’s substituted findings of fact, a reviewing court will naturally accord greater probative force to the hearing officer's contrary findings when the question is simply the weight or credibility of testimony by witnesses, or when the factual issues are otherwise susceptible of ordinary methods of proof, or when concerning those facts the agency may not rightfully claim special insight.
******
At the other end of the scale, where the ultimate facts are increasingly matters of opinion and opinions are increasingly infused by policy considerations for which the agency has special responsibility, a reviewing court will correspondingly give less weight to the hearing officer’s findings in determining the substantiality of evidence supporting the agency’s substituted findings.
Id. at 579. See also Campbell v. Department of Labor and Employment Security, 455 So.2d 569 (Fla. 1st DCA 1984); Barker v. Board of Medical Examiners, 428 So.2d 720 (Fla. 1st DCA 1983); Section 120.68(7).

. The Department stated in its final order:
The Bank takes exception here to the Hearing Officer’s findings in No. 21 that Mr. Perkins' study "produces a more reliable and accurate result than the other suggested methodologies because of its well-accepted approaches, the use of relative weights, a broader and more representative peer group and its rejection of irrelevant and improper data.” Mr. Perkins described in detail the methodology he utilized in this case (At T-102-104, Vol. II) based primarily on the opinions of the U.S. Comptroller of the Currency’s methodology in cases involving the valuation of dissenters’ stock. Although the Department has rejected the Perkins’ study choice of peer group, the weight of the evidence supports the accuracy of Mr. Perkins’ greater weighting (75 percent) of his "investment value” result in combination with his lesser weighting (25 percent) of the “adjusted book value” result (At T-123-131, Vol. II) and, therefore, the Department has accepted the Hearing Officer's Finding No. 21.

. Section 55.03(1) provides:
(1) A judgment or decree entered on or after October 1, 1981, shall bear interest at the rate of 12 percent a year unless the judgment or decree is rendered on a written contract or obligation providing for interest at a lesser rate, in which case the judgment or decree bears interest at the rate specified in such written contract or obligation.

. Section 57.041(1) provides:
(1) The party recovering judgment shall recover all his legal costs and charges which shall be included in the judgment; but this section does not apply to executors or administrators in actions when they are not liable for costs.