## Armstrong
## v.
## Marathon Oil Co.
*[Cite as 2 AOA 122]*

Case No. 5-88-11
Hancock County, (3rd)
Decided March 29, 1990

R.C. 1701.85

*Mr. Clyde C. Kahrl, Attorney at Law, 373 W. 6th Avenue, Columbus, Ohio 43201, For Appellants.*

*Mr. John F. Kostyo, Attorney at Law, 320 S. Main Street, Findlay, Ohio 45840, For Appellants.*

*Mr. Russell E. Rakestraw, Attorney at Law, 119 E. Crawford Street, Findlay, Ohio 45840, For Appellee.*

*Messrs. Jones, Day, Reavis & Pogue, 901 Lakeside Avenue, Cleveland, Ohio 44114, For Appellee.*

EVANS, J.

These cases are appealed from judgments of the Court of Common Pleas of Hancock County regarding the fair cash value and interest thereon to be paid to the shareholders of the Marathon Oil Company (Marathon) dissenting from the 1982 merger of Marathon and the United States Steel Corporation (USX).

Appellants, Francis A. Armstrong, et al., initiated this action in 1983 in the Court of Common Pleas of Hancock County to pursue the appraisal remedy provided for shareholders dissenting from a fundamental corporate change (e.g. merger) by R.C. 1701.85. The trial court found that the stock market price quotation two (2) months prior to the vote approving the proposed merger was the controlling estimate of fair cash value. Both Marathon and Armstrong appealed the decision to the Ohio Supreme Court.

In *Armstrong* v. *Marathon* (1987), 32 Ohio St. 3d 397, (paragraphs two and three of the syllabus), the Ohio Supreme Court considered the proper method of computation of fair cash value and found as follows:

"2. Where facts presented to the trial court evidence a reasonably suitable, active market of the particular corporate stock under consideration, and the actual market may be deemed to be sufficiently active in the trading of such stock, then the trial court should give substantial weight to such evidence. This actual market price would satisfy the willing seller-willing buyer, test set forth in R.C. 1701.85, and would be the 'fair cash value' of such stock.

"3. If such active market trading of the stock in question is so found, the fair cash value is properly measured pursuant to R.C. 1701.85 (C) as the stock market price of the shares as of the day prior to that on which the shareholders' vote on the corporate transaction was taken excluding any appreciation or depreciation in this price resulting from the proposal submitted to the shareholders."

The Ohio Supreme Court further considered the proper computation of interest payable on such fair cash value in *Armstrong, supra*, (paragraph five of the syllabus), as follows:

"5. Insofar as R.C. 1701.85 sets forth a 'special proceeding within the meaning of section 2505.02 of the Revised Code,' and provides for an interest rate based upon all equitable considerations, then the statutory rate set forth in R.C. 1343. 01 (A) is not controlling. The rate should be determined from the written evidence submitted by the parties upon this issue"

Pursuant to these findings the Ohio Supreme Court remanded the cause to the Court of Common Pleas of Hancock County for the resolution of two (2) narrow issues. The trial court was to determine, first, "what appreciation or depreciation, if any, existed due to the U.S Steel proposal submitted to the Marathon shareholders" and, second, "what rate of interest, given various factors not limited by R.C. 1343.01 (A), shall in the court's discretion be awarded the dissenting shareholders." Marathon filed a motion for rehearing which was denied on November 4, 1987. By judgment entry filed January 22, 1988, the trial court declared that the shareholders would not be permitted to engage in further discovery nor introduce additional expert testimony. Rather, the trial court permitted only the submission of briefs on the relevant issues with no reply briefs permitted.

On March 18, 1988, the trial court rendered its decision finding that the market price of Marathon stock on the day prior to the approval of the merger was $75.75. The court then adjusted this sum to $68.43 to compensate for the appreciation of the stock resulting from the proposed merger. In regards to the rate of interest to be awarded the trial court found 8.5% to be equitable.

It is from this judgment that appellants appeal submitting nine (9) assignments of error. Being substantially related, assignments of error one (1), two (2) and four (4) will be consolidated for review.

## I.
THE COMMON PLEAS COURT DENIED SHAREHOLDERS DUE PROCESS OF LAW BY DENYING THE SHAREHOLDERS THE RIGHT TO INTRODUCE EXPERT TESTIMONY UPON THE ECONOMIC THEORIES OF THE OHIO SUPREME COURT.

## II.
THE COMMON PLEAS COURT DENIED SHAREHOLDERS DUE PROCESS OF LAW BY DENYING THE SHAREHOLDERS THE RIGHT TO PRESENT FULL ARGUMENTS

AND REPLY BRIEFS ON THE ISSUE OF FAIR CASH VALUE.

### III.

THE COMMON PLEAS COURT DENIED SHAREHOLDERS DUE PROCESS OF LAW BY INTERPRETING THE OHIO SUPREME COURT'S DECISION IN DIRECT CONTRADICTION TO ARTICLE I SECTION 19 OF THE OHIO CONSTITUTION AND ARTICLE I SECTION 10 OF THE UNITED STATES CONSTITUTION PROHIBITING THE IMPAIRMENT OF CONTRACTS AS WELL AS ARTICLE II SECTION 28 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION PROHIBITING THE TAKING OF PROPERTY WITHOUT DUE PROCESS OF LAW."

Appellants go to great lengths to demonstrate that [b]ecause the 'contract clause' and the 'just compensation clause' of the Constitution mandate that the state provide an appraisal remedy for dissenting shareholders, that appraisal standard must be interpreted so as to be within the constitution". Appellants contend, therefore, that the trial court's refusal to allow further evidentiary hearings for the introduction of expert testimony and reply briefs constituted deprivation of their constitutional rights of confrontation, cross-examination and due process.

R.C. 1701.85 (C) was promulgated to provide an accurate definition of fair cash value and to guide Ohio courts in the computation of such. R.C. 1701.85 (C) reads as follows:

"(C) If the proposal was required to be submitted to the shareholders of the corporation, fair cash value as to those shareholders shall be determined as of the day prior to that one which the vote by the shareholders was taken, and, in the case of a merger pursuant to section 1701.80 or 1701.801 of the Revised Code, fair cash value as to shareholders of a constituent subsidiary corporation shall be determined as of the day before the adoption of the agreement of merger by the directors of the particular subsidiary corporation. The fair cash value of a share for the purposes of this section is the amount that a willing seller, under no compulsion to sell, would be willing to accept, and that a willing buyer, to pay, but in no event shall the fair cash value exceed the amount specified in the demand of the particular shareholder. *In computing such fair cash value any appreciation or depreciation in market value resulting from the proposal submitted to the directors or to the shareholders shall be excluded.*" (Emphasis added.)

Therefore, the issue of what appreciation or depreciation the stock incurred as a result of the proposed merger was properly before the trial court in the initial proceeding which, as noted by the Ohio Supreme Court in *Armstrong, supra,* at 401, was "[a] full hearing on the issue of fair cash value, consisting of approximately three weeks of trial, * * * ". Accordingly, being a statutory element utilized in computing fair cash value, appellants had not only opportunity, but a responsibility to introduce expert testimony pertaining to the appreciation or depreciation in Marathon stock as a result of the proposed merger in the initial trial.

In light of this, appellants, in support of their second assignment of error, contend that given the Ohio Supreme Court's adoption of various complicated economic theories unique to the computation of fair market value, expert testimony was required to properly address the newly formulated issues. Appellants argue that the trial court's refusal to permit additional testimony or reply briefs constituted a deprivation of their constitutional rights of confrontation, cross-examination and due process.

Upon review of Justice Holmes' opinion in *Armstrong, supra,* we are unable to discern the advancement of any unique economic theory or interpretation of R.C. 1701.85 by the Supreme Court. Quite the contrary, the Ohio Supreme Court cites both *Vought* v. *Republic-Franklin Ins. Co.* (1962), 117 Ohio App. 389; and *Parten* v. *Pure Oil Co.* (July 1, 1969), Franklin App. No. 9023, unreported, in interpreting R.C. 1701.85. The court adopted nothing new but rather reaffirmed and consolidated the existing case law and statutory language.

We agree, as argued by appellants, that the Supreme Court cites numerous academic articles in its opinion. However, these were not utilized with the intent of incorporating them into the computation of fair cash value, rather they were offered to aid in the explanation of the views maintained by other jurisdictions and as rationale for the less complicated valuation proceedings set forth in *Vought, Parten* and R.C. 1701.85. For example, the "efficient market theory" is offered only as rationale for the conclusion that the stock market quotation the day prior to the vote for the proposed merger is an accurate and desirable initial value from which to compute fair cash value. *See Armstrong, supra,* at 410. Another example cited by appellants is the "hypothetical market value" computation. However, this theory was already embedded in Ohio law by statutory mandate in the "willing seller-willing buyer" test

found in R.C. 1701.85. See, *Armstrong, supra*, at 408.

We note also that the Ohio Supreme Court in *Armstrong, supra*, at 419, made it quite clear in their opinion that * * * the issues, pursuant to our determination of the (valuation) issue above, have been considerably and are resolvable without recourse to further hearing."

Appellants' assignments of error one (1), two (2) and four (4) are not well taken and are overruled.

For their third assignment of error appellants submit following:

### III.

THE COMMON PLEAS COURT ERRED AS A MATTER OF LAW BY INTERPRETING THE OHIO CORPORATE APPRAISAL STATUTE ACCORDING TO ECONOMIC THEORIES EXPRESSLY REJECTED BY THE OHIO SUPREME COURT.

We disagree. The Court of Common Pleas of Hancock did not interpret the Ohio corporate appraisal statute any economic theories. Rather, the Ohio Supreme Court the statute and remanded the cause to the trial with clear instructions to resolve two specific, narrow. We find that the trial court complied with the of the Ohio Supreme Court in resolving the issues and conducted no interpretation of R.C. 1701.85.

Appellants' assignment of error three (3) is not well taken and is overruled.

For their fifth assignment of error appellants submit the following:

### V.

THE COMMON PLEAS COURT DENIED SHAREHOLDERS DUE PROCESS OF LAW BY AWARDING A RATE OF INTEREST SELECTED SOLELY UPON REVIEW AND CONSIDERATION OF EVIDENCE NOT PROPERLY ADMITTED TO THE RECORD.

In support of this assignment of error appellants argue that the trial court premised its decision, establishing an equitable rate of interest, upon evidence not properly admitted to the record. More specifically, appellants cite the trial court's consideration of various excerpts from the *Wall Street Journal* included in appellee's memorandum to the trial court which were not properly authenticated.

Further, appellants argue that the consideration of this evidence acted to deny them their constitutional rights of confrontation, cross-examination and due process because no reply memoranda nor additional evidentiary hearings were permitted.

Evid. R. 902(6) provides as follows:

"Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
* * *
"(6) Printed materials purporting to be newspapers and periodicals, including notices and advertisements contained therein."

The *Wall Street Journal* is such a newspaper or periodical as to be self-authenticating. While there are further prerequisites to admissibility, appellants raise only the issue of authenticity.

Appellants further argue that the admission and consideration of such evidence absent an opportunity to confront and cross-examine constitutes a violation of appellants' rights of confrontation, cross-examination and due process.

As noted earlier, appellants had ample opportunity to introduce evidence and refute that offered by appellee in the initial trial. Furthermore, the trial court's findings neither cite nor indicate reliance upon the *Wall Street Journal* articles submitted by appellee.

Upon noting that no further evidentiary hearings were necessary and that it was sufficient for the parties to submit written briefs upon the issue, the Ohio Supreme Court instructed the trial court to proceed "within its own discretion, [to] determine an interest rate 'which the court considers equitable'". In so doing, "[t]he trial court therefore should have considered other evidence as presented by the parties, including, but not limited to, the prevailing rate of interest for various kinds of loans, the prime rate over that period of time and any other such evidence". We find that the trial court complied with the mandate of the Ohio Supreme Court.

Appellants' fifth assignment of error is not well taken and is overruled.

For their sixth assignment of error appellants submit the following:

### VI.

THE COMMON PLEAS COURT ABUSED ITS DISCRETION BY AWARDING A RATE OF INTEREST AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279; *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77. The weight to be given the evidence and the credibility of the witnesses are matters for the trier of fact, *Seasons Coal Co., supra*; *State* v. *DeHass* (1967), 10 Ohio St. 2d 230; *Barton* v.

*Ellis* (1986), 34 Ohio App. 3d 251, and any difference of opinion as to the weight and credibility of the evidence is not a legitimate ground for reversal. *Seasons Coal Co., supra.*

In the case *sub judice*, we find the trial court's judgment on remand as to the correct rate of interest, to be supported by competent, credible evidence going to all the essential elements of the case. The record does not demonstrate the in depth rationale of the trial court in determining 8.5% to be the equitable rate of interest, however, the record does not illustrate any abuse of discretion on the part of the trial court.

Appellant's sixth assignment of error is not well taken and is overruled.

For their seventh assignment of error appellants submit the following:

## VII.

THE COMMON PLEAS COURT DENIED SHAREHOLDERS DUE PROCESS OF LAW BY AWARDING A RATE OF INTEREST UNRELATED TO THE INSTRUMENTS INVOLVED IN THE TRANSACTION, SUCH THAT WHEN THE IMPROPER INTEREST IS PAID UPON THE APPRAISED VALUE, THE EFFECT IS TO PUNISH SHAREHOLDERS FOR SEEKING THE CONSTITUTIONALLY MANDATED REMEDY OF APPRAISAL.

In support of this assignment of error appellants argue that the disparity in the final amounts received by the dissenting and assenting shareholders constitutes a denial of due process of law. When the Marathon shareholders who agreed to the merger cashed in their notes they received total compensation of $162.15 for each of their shares. According to the judgment of the trial court on remand the dissenting shareholders will receive $104 for each of their shares. Appellants contend that this disparity is attributable to an unreasonable interest rate awarded by the trial court.

We disagree. The Ohio Supreme Court in *Armstrong* and R. C. 1701.85 both provide that in establishing the fair cash value to be paid dissenters, the court must take into account the appreciation or deprecation in the market value of the stock attributable to the proposed merger. The rationale underlying this principle is that, if the stock appreciates as a result of the merger, the dissenting shareholders should not be entitled to benefit from the increased value. Likewise, if the market value of the stock depreciates, the dissenting shareholders should not be penalized for the decreased value. On remand, the trial court found the value of the stock on the day prior to the approval of the merger to be $75.75.

However, that sum was adjusted to $68.43 so as not to allow the dissenters to benefit from the corporate transaction from which they dissented. Therefore, it is apparent that the application of R.C. 1701.85 is likely to produce a fair cash value to be paid dissenting shareholders different from that received by assenting shareholders unless the fundamental corporate change is found to have had absolutely no effect on the market price of the stock, an unlikely possibility. For this court to find that this disparity constitutes a due process violation would in essence permit dissenting shareholders to shield themselves from any loss as a result of the depreciation of the stock and permit them to benefit from any appreciation in the stock, a "no lose" proposition. This is obviously not the extent of protection the legislature intended to provide for minority shareholders dissenting from a fundamental corporate change.

The Supreme Court remanded the issue of the interest rate to be awarded appellants to the trial court with the instructions to disregard R. C. 1343.01(A) and, instead, consider the various factors introduced by the parties earlier in the initial trial to arrive at an equitable rate of interest. The record demonstrates that the trial court complied with the mandate of the Supreme Court. While we may not have found the equitable rate of interest to have been 8.5%, we are nonetheless bound by the trial court's findings absent an abuse of discretion. *C.E. Morris C., supra.*

Appellants seventh assignment of error is not well taken and is overruled.

For their eighth assignment of error appellants submit the following:

## VIII.

THE COMMON PLEAS COURT PROCEEDED CONTRARY TO THE JUDGMENT OF THIS COURT IN 1986 AND THE SUPREME COURT IN 1987 AND DENIED SHAREHOLDERS DUE PROCESS OF LAW BY DENYING THE RIGHT TO ENGAGE IN DISCOVERY AND INTRODUCE EVIDENCE TO THOSE SHAREHOLDERS WHO HAD PREVIOUSLY BEEN DENIED THE RIGHT TO PARTICIPATE IN THE TRIAL OF 1984.

As previously note, the Ohio Supreme Court did not anticipate any necessity for further evidentiary hearings on any of the issues presented to the trial court on remand. In the initial trial appellants had a duty to present a complete case on behalf of those represented and were in fact invited by the trial court to introduce testimony as to all relevant theories of valuation and interest. The subsequent addition of additional dis-

senting shareholders to the class does not grant appellants the right to introduce further evidence which they have already had not only an opportunity but also a duty to present. The Price Trust was the only group for which the Ohio Supreme Court provided for additional discovery and proceedings and they have settled their claims.

Appellant's eighth assignments of error is not well taken and is overruled.

For their ninth assignment of error appellants submit the following:

### IX.

THE COMMON PLEAS COURT DENIED SHAREHOLDERS DUE PROCESS OF LAW BY ESTABLISHING THE ENDING DATE FOR THE PAYMENT OF INTEREST AS THIRTY DAYS FROM THE DATE OF THE JUDGMENT, THEREFORE, PREJUDICING SHAREHOLDERS' RIGHT OF APPEAL.

In support of this assignment of error appellants argue that App. R. 3 allows an appellant thirty days within which to file a Notice of Appeal. The trial judge provided the shareholders only thirty (30) days to comply with his order. Therefore, if the shareholders chose to exercise their right to appeal, they were denied the right to continue to receive interest on the judgment.

We disagree. As cited by Marathon, appellants entered into a stipulation in the trial court, filed June 23, 1988, providing essentially as follows:

"Appellants Francis A. Armstrong, Cede & Co., Gordon T. Hoddinott, Douglas B. Littlewood, and Donald M. White have withdrawn their respective Motions for Stay of Order and Judgment Pending Appeal on the condition that Appellants' standing to pursue these appeals, including appeal of the trial court's Judgment Entry of April 6, 1988, and to potentially obtain additional payments pursuant to future judgments will not be prejudiced; nor have Appellants waived the right to have these judgments altered on appeal by the surrender of shares and acceptance of payment of the amount due them in accordance with the trial court's Judgement Entry of April 6, 1988."

As is apparent, appellants have filed their appeal, the merits of which we consider herein. Accordingly, we find that upon entering into such stipulation appellants waived their right to assign error to the trial court's entry to the extent that it allows interest for thirty (30) days. Further, being in direct compliance with R.C. 1701.85 we find no error on the part of the trial court absent this waiver.

Appellant's ninth assignment of error is not well taken and is overruled.

In conclusion, appellants mischaracterize this appeal by asking this court to do indirectly what we cannot do directly; overrule the Ohio Supreme Court. This cause was demanded to the Court of Common Pleas of Hancock County for the resolution of two very specific issues.

The Supreme Court instructed the trial court as to how to determine the initial fair cash value to be paid the dissenting shareholders and to adjust for depreciation or appreciation in the value attributable to the proposed merger. Secondly, the trial court was to consider the relevant factors in determining an equitable rate of prejudgment interest. In sum, we can glean no departure in the trial court's findings from the mandate of the Ohio Supreme Court and the record demonstrates no reversible error.

Accordingly, appellant's nine (9) assignments of error are not well taken and are overruled. Having found no error prejudicial to the appellants herein, in any of the particulars assigned and argued, the judgments of the trial court are affirmed.

*Judgments affirmed.*

SHAW, P.J., and MILLER, J., Concur.